Filed 6/22/22; reposted to provide correct version

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE ex rel. TODD SPITZER, as District Attorney, etc.,<br><br>     Plaintiff and Respondent,<br><br>          v.<br><br>AWI BUILDERS, INC., et al.,<br><br>     Defendants and Appellants. | G059795<br><br>(Super. Ct. No. 30-2018-00974579)<br><br>O P I N I O N |

Appeal from an order of the Superior Court of Orange County, Craig L. Griffin, Judge. Affirmed. Motion to dismiss. Denied.

Pacheco & Neach, Rod Pacheco, Brian Neach and Molly J. Magnuson, for Defendants and Appellants.

Todd Spitzer, District Attorney, and Holly M. Woesner, Deputy District Attorney, for Plaintiff and Respondent.

\*          \*          \*

In 2015, defendants AWI Builders, Inc. (AWI), Construction Contractors Corporation, Zhirayr Robert Mekikyan, Anna Mekikyan, and Tigran Oganesian (collectively, the AWI defendants) were under criminal investigation by the Orange County District Attorney's Office (OCDA) and the Riverside County District Attorney's Office (RCDA) in connection with AWI's involvement in certain public works projects including AWI's work on the Orange County Fair project. In October 2015, pursuant to search warrants jointly obtained by OCDA and RCDA, a large amount of AWI's property was taken into OCDA's custody.

In 2017, OCDA decided not to pursue criminal charges against the AWI defendants and reassigned the matter to Orange County Deputy District Attorney Kelly Ernby[1] for civil prosecution. In 2018, Ernby filed a civil complaint, on behalf of the People of the State of California and against the AWI defendants, for violations of the unfair competition law (Bus. & Prof. Code, § 17200) (UCL),[2] provided the AWI defendants with a copy of OCDA's full investigative file, sans privileged documents, and returned documents seized during the criminal investigation to the AWI defendants.

In 2020, the AWI defendants filed a motion seeking an order recusing and disqualifying from this case Ernby, Donde McCament (a now retired Orange County deputy district attorney who was involved in the prior criminal investigation), and the entire OCDA (the motion to recuse). The AWI defendants argued OCDA had engaged in misconduct by, inter alia, improperly handling property seized during the criminal investigation that was protected by the attorney-client privilege and the work product doctrine. The AWI defendants also argued that in the instant UCL action, Ernby had

---

[1] At oral argument, the People informed the court that, since briefing concluded in this matter, Ernby had passed away.

[2] We refer to the instant civil action as the "UCL action."

2

wrongfully threatened one of the AWI defendants, their counsel, and a paralegal with criminal prosecution, a claim Ernby categorically denied.

After requesting supplemental briefing and evidence on the issue of OCDA's handling of privileged material received through the execution of the search warrants, the trial court denied the motion to recuse.

We affirm. The AWI defendants do not challenge the sufficiency of the evidence supporting the trial court's findings. The trial court did not err by denying the motion to recuse because the evidence showed that no conflict of interest existed that would render it unlikely that the AWI defendants would receive a fair trial. (Pen. Code, § 1424, subd. (a) (section 1424(a)).)

We publish this opinion for two reasons. First, we hold that a motion seeking to disqualify a district attorney from pursuing civil claims against a party under the UCL must be decided under section 1424(a). In 1985, the Legislature amended and broadened the scope of section 1424(a) (Stats. 1985, ch. 24, § 1, p. 2391), from applying only to motions to disqualify a district attorney from prosecuting a criminal case to motions to disqualify a district attorney from "performing an authorized duty." (See *In re Marriage of Abernethy* (1992) 5 Cal.App.4th 1193, 1198-1199.) This is in contrast to subdivision (b)(1) of Penal Code section 1424, which limits the statute's application to motions seeking to disqualify a city attorney or city prosecutor "from performing an authorized duty *involving a criminal matter*." (Italics added; see *City and County of San Francisco v. Cobra Solutions, Inc.* (2006) 38 Cal.4th 839, 850 [holding Pen. Code, § 1424 inapplicable to civil action filed by city attorney].) Section 17206, subdivision (a), of the Business and Professions Code authorizes a district attorney to bring a civil action under the UCL. Because the prosecution of civil claims under the UCL qualifies as an authorized duty of the district attorney within the meaning of section 1424(a), a motion to recuse a district attorney in such a case must be resolved under that code section.

Second, we hold that an order denying a motion to recuse under section 1424(a) is an appealable order because it constitutes an order refusing to grant an injunction within the meaning of Code of Civil Procedure section 904.1, subdivision (a)(6).  In other words, applying *Meehan v. Hopps* (1955) 45 Cal.2d 213, 214-218 (*Meehan*), an order denying such a motion is an order that refuses to enjoin counsel from further participation in the case and is therefore appealable.


I

FACTS AND PROCEDURAL HISTORY

*A.  OCDA's Criminal Investigation of the AWI Defendants and the Execution of Search Warrants.*

In the course of its criminal investigation of AWI's labor and employment practices as a contractor in certain public works projects, including at the Orange County Fairgrounds, in October 2015, OCDA and RCDA jointly obtained search warrants that were executed by law enforcement at AWI's offices and at the residence of Zhirayr Robert Mekikyan[3] and Anna Mekikyan.  Law enforcement seized documents, computers, drives, servers, phones, tablets, and thumb drives, which were ultimately taken into custody by OCDA.

The AWI defendants' counsel promptly informed OCDA that the property seized included documents protected by the attorney-client privilege and/or the attorney work product doctrine.  Counsel asserted that as a result of the seizure, the AWI defendants had lost access to all of their electronic and written construction and labor records including, but not limited to, time sheets, cancelled checks, bank statements, construction daily reports, project files, pay applications, payments to subcontractors, and requests for additional compensation from subcontractors.  The AWI defendants asserted

---

[3]  We hereafter refer to Zhirayr Robert Mekikyan as Mr. Mekikyan.

4

that these documents were necessary for them to defend against the then pending administrative actions that had been brought against the AWI defendants by the Department of Labor Standards Enforcement (DLSE).

McCament was assigned to the criminal investigation of the AWI defendants. She declined the AWI defendants' counsel's proposal to allow them to conduct a supervised review of the seized property for privilege. Instead, a civil attorney was selected to serve as a special master in the case. Alan C. Brown, a practicing attorney since 1993, was a member of the American Board of Trial Advocates, had served as the 2009 president of the Orange County Trial Lawyers, had completed the California State Master Program, and had served as a special master in approximately 10 matters. Acting as special master, over the course of two days in February 2016, Brown reviewed the documents that had been obtained by OCDA in this matter without the assistance of the assigned Orange County Investigator Elaine Noce. Brown determined that a small number of the seized documents were privileged; he placed those documents into an envelope that he sealed and gave to Noce. Brown did not review any electronic devices associated with AWI. He was not compensated for his services as special master.

In June 2016, the computers that had been seized during the execution of the search warrants were taken to the Orange County Regional Computer Forensic Laboratory (OCRCFL) for imaging. In August 2016, Shannon Rackley, an Orange County investigator, who worked in the insurance fraud unit, was assigned to assist McCament with cases involving public works jobs. Contract attorney Lindsey Peck conducted a taint review of the computers "in order to bookmark and place any privileged information into a folder that cannot be accessed by anyone other than Lindsey Peck." Peck had never been an Orange County deputy district attorney.

In November 2016, Rackley was instructed to begin a "Case Agent Investigative Review" (CAIR) of the computers. Rackley reviewed a total of three computers and made several bookmarks that did not refer to privileged information. In

5

May 2017, however, Rackley was instructed to discontinue any further CAIR. Rackley contacted OCRCFL and advised them that she would no longer be conducting CAIR on the imaged items. OCRCFL placed all imaged data in raw form on tapes and did not complete any type of report for the items Rackley had bookmarked. Rackley did not copy or save any data bookmarked during her CAIR.

*B. OCDA Did Not File Criminal Charges Against the AWI Defendants and Reassigned the Matter to Ernby for Civil Prosecution Under the UCL.*

In May 2017, OCDA decided not to file criminal charges against the AWI defendants and reassigned the case to Deputy District Attorney Ernby for civil prosecution. Ernby had not been part of the criminal investigation or decision whether to file criminal charges. Because the AWI defendants had accused McCament of prosecutorial misconduct in relation to the criminal investigation, Ernby was "walled off" from speaking to McCament about the substance of her investigation or alleged wrongdoing.[4] Ernby was given full access to the criminal investigatory file that contained the entirety of the evidence and factual reports as they were regularly kept in the normal course of business at OCDA that related to the allegations of the complaint. Ernby conducted her own independent review of the facts and evidence at that time.

*C. The People's Complaint for Unfair Competition Against AWI.*

On February 20, 2018, OCDA initiated the instant UCL action by filing a complaint drafted by Ernby alleging unfair and fraudulent business practices in violation of the UCL against the AWI defendants. The complaint alleged that, in 2013, the AWI defendants were awarded a $10.3 million public works contract to construct a new lobby

---

[4] Ernby stated in a declaration that other than speaking to McCament's attorney to gather records to produce in discovery in the instant civil case, attending McCament's deposition, and speaking to her in passing about matters unrelated to her investigation in this case, Ernby had not spoken to McCament "about any substantive legal matters pertaining to the allegations in this case."

and entrance to the Pacific Amphitheater at the Orange County Fairgrounds (OC Fair Project) following a competitive bid process. The AWI defendants thereafter employed dozens of workers to complete the OC Fair Project between September 2013 and July 2015, "and secured for themselves the profits from this project."

The complaint further alleged the AWI defendants "committed over two thousand separate violations of law, fraudulent acts and unfair business practices in relation to the OC Fair Project," in violation of the UCL by, inter alia, (1) failing to pay about $200,000 in prevailing wages; (2) failing to report the wages for many of the workers to state authorities and thereby avoided paying state payroll taxes; (3) submitting fraudulent payroll reports under penalty of perjury, fake checks, and other forged documents to the OC Fair Project administrators and state agents; and (4) threatening one or more workers "with their job, or deportation, if they reported the unlawful practices to authorities."

*D. Counsel for the AWI Defendants Accused Ernby of Improperly Threatening Criminal Prosecution.*

A few months after the complaint was filed, in April 2018, Ernby and counsel for the AWI defendants, Rod Pacheco, discussed anticipated discovery in the UCL action. Ernby agreed to produce OCDA's entire case file except for any attorney work product or privileged information. Pacheco asked Ernby to return property that had been seized during the execution of the search warrants during the criminal investigation. Ernby agreed to look into the matter and get back to Pacheco. That same day, the AWI defendants served a request for production of documents, which included property seized during the execution of the search warrants.

The following week, Ernby informed Pacheco that OCDA was working on obtaining the court orders necessary to return the seized property. Ernby timely served a response to the AWI defendants' request for production of documents, confirming the

7

People's agreement to produce responsive documents that were neither privileged nor protected under the attorney work product doctrine upon obtaining a protective order governing the use of certain information in the UCL action.

On June 4, 2018, Pacheco and Ernby appeared in court for a scheduled hearing on a motion. Mr. Mekikyan appeared with Pacheco. Pacheco and Ernby agreed to sit outside the courtroom and meet and confer on several topics, including a request for a stipulated protective order. Pacheco and Ernby thereafter sharply disagreed about what happened at that meeting.

In a declaration filed in support of the motion to recuse, Pacheco stated that, while he was speaking to Ernby, Ernby looked at Mr. Mekikyan, who was on his phone, shouted that Mr. Mekikyan was committing a felony by tape recording their conversation, stated she intended to prosecute him for recording the conversation, and demanded a copy of the recording. Pacheco declared Mr. Mekikyan quickly turned his phone around so that Ernby could see on the screen that he had not been recording, but instead had been texting regarding business matters. Pacheco also declared that he told Ernby to stop threatening his client with the powers of her office.

Pacheco further stated in his declaration that "[a]fter Ernby stopped yelling," they continued discussing discovery issues, at the end of which discussion, Ernby referred to a "'perjury prosecution.'" Pacheco stated Ernby explained that she intended to file a perjury charge against Pacheco's paralegal Daniel Kanu because he had lied on a proof of service that he had served her with a pleading she never received.[5] Pacheco stated he told Ernby that he had ethical concerns about her threats and that

---

[5]  Pacheco further stated in his declaration that paralegal Kanu later confirmed that he had mailed the pleading in question to Ernby and told Pacheco that Ernby had previously complained that "her official office address was a problem due to inefficient mail sorting by OCDA personnel."

8

maybe he should get his own bail money together should Ernby attempt to prosecute him as well. He asserted Ernby responded, "'[G]ood idea.'"

In a declaration filed in opposition to the motion to recuse, Ernby stated Pacheco's accusations were false and that she had never threatened to file criminal charges against Mr. Mekikyan or anyone else during the June 4, 2018, meeting. She further stated that, notwithstanding her written communications with Pacheco over the course of a year and eight months following that meeting reiterating that his accusations were "'outright false'" and confirming that she had no intent of filing any criminal charges, Pacheco "continues to make the same false accusations — including in the present motion."

*E. OCDA Placed the Digital Tapes in Secure Storage.*

On October 16, 2018, OCRCFL released six digital data storage tapes to Rackley for the sole purpose of OCDA placing them in secure storage. The tapes constituted the master data archive of OCRCFL processing of the groups of digital evidence items that had been seized through the execution of the search warrants to the extent an examination was conducted. The format of such tapes required processing on OCRCFL equipment in order to be rendered viewable. Thus, in order to review data on those tapes, the tapes would first need to be resubmitted to the OCRCFL.

On October 17, 2018, Rackley gave Orange County Investigator Fred Nichols the six digital data storage tapes which he secured, prepared for booking, and then booked as evidence into the OCDA evidence office on November 9, 2018. Nichols wrote a report documenting the booking. Nichols did not view or make any attempt to view the data on any of the tapes. At no time while the tapes were in his possession did any other person have access to them.

Nichols never provided Ernby any access to the tapes. Rackley had neither met nor had any communication with Ernby.

9

*F. The AWI Defendants Filed the Motion to Recuse.*

In January 2020, citing the standards and analytical framework of Penal Code section 1424, the AWI defendants filed the motion to recuse in which they sought an order recusing and disqualifying McCament, Ernby, and the entire OCDA from prosecuting the UCL action against the AWI defendants, and in their place, substituting in the Attorney General for the State of California.

The motion was brought on the grounds OCDA had "(1) improperly countenanced and participated in several constitutional violations against [the AWI defendants] during their inquiry; (2) participated together and encouraged criminal violations against [the AWI defendants]; (3) participated together and encouraged violations of [the AWI defendants'] rights to privacy by third parties; (4) threatened to falsely prosecute Mr. Mekikyan for a violation of Penal Code section 632 (Invasion of Privacy), knowing that he was innocent, in an unlawful attempt to intimidate him; (5) threatened to falsely prosecute a paralegal of Pacheco & Neach PC, Daniel Kanu, for a violation of Penal Code section 118 (Perjury), knowing that he was innocent, in an unlawful attempt to intimidate the law firm representing [the AWI defendants]; (6) knowingly attempted to grossly exceed their lawful authority by intending to file numerous felony charges that have no territorial jurisdiction within Orange County; (7) improperly refused to return numerous documents and other property belonging to [the AWI defendants]; and (8) reviewed, over counsel's objection, [the AWI defendants'] privileged attorney/client and work product communications, thus knowingly violating the attorney/client privilege and work product doctrine."

*G. The Trial Court Requested Supplemental Briefing and Evidence.*

At the August 24, 2020, hearing on the motion to recuse, the trial court entertained oral argument and continued the hearing on the motion to recuse to allow for "further briefing and evidence" directed at the following issues:

"1.  What was the result of the privilege review performed by outside counsel contracted by Plaintiff for this purpose?  Specifically, was there any type of privilege log produced, or were the privileged documents simply removed/deleted from the seized items ultimately provided to the District Attorney?  A declaration from the attorney who performed the review regarding the procedures followed and criteria used in determining whether an item is privileged may be helpful.

"2.  If some type of privilege log was prepared by the contract attorney, was a copy given to the defendants to ensure that privileged items were not missed?  If it was provided, what items do Defendants contend were missed?  Did Defendants notify the District Attorneys' Office of any inadequacy?

"3.  Did Ms. Ernby or anyone else at the District Attorneys' Office inadvertently receive any documents that appeared to be privileged, despite the independent review?  If yes, which documents were received and what was the level of review made (glanced at, partially read, fully read), and what was done with it (destroyed or returned to defendants)?

"4.  Defendants description of the privileged materials is vague.  Courts hearing disqualification motions typically consider the specific document(s) improperly reviewed, to determine the level of prejudice to the defendant's ability to receive a fair trial.  A privilege log from Defendants describing the nature of the document may be helpful."

The parties thereafter filed multiple supplemental briefs and declarations. The People submitted further declarations, including those of Ernby, Special Master Brown, Orange County Deputy District Attorney Michelle Cipolletti, McCament, Rackley, and Nichols.

In her declaration, Ernby reported that, since the trial court's order for supplemental briefing and evidence on the motion to recuse, and "[f]or the first time in this litigation, on October 10, 2020, [the AWI defendants] produced a privilege log."

11

Ernby stated: "With the exception of one potentially privileged one-page document that [the AWI defendants] produced to my office, bates stamped AWI0002632 (that I promptly notified [the AWI defendants'] counsel of and had blacked out and removed from our files), I am unaware of any privileged documents that I have had access to or reviewed in this case. . . . I do not recall reviewing any substantive information in the document that appeared privileged. It is my practice to promptly alert opposing counsel if I identify any inadvertently produced privileged document, and to immediately return and/or destroy any such document. Other than the one-page document I identified from [the AWI defendants'] production and had destroyed in November 2019, I have not personally identified any other documents that appear to be attorney-client privileged communications in any of the investigatory records that I have reviewed in this case."

Ernby further declared: "I never had physical access to, and did not perform any searches in, any of the computers or electronic devices belonging to [the AWI defendants] that were seized by the [OCDA] in relation to the October 2015 search warrant. I also never had physical access to, and did not review, any of the sealed records from the Special Master Alan Brown." Ernby's declaration concluded: "Except for certain attorney-work-product containing documents in my file, all of the documents and evidence that I have access to review in this case was bates stamped and produced to [the AWI defendants]. (OCDA000001-OCDA333658.) In total, the People have produced over 300,000 pages of documents in this case. [The AWI defendants'] counsel has never communicated to me that they believe any one of these documents (which can readily be identified by the bates number assigned) contains attorney client privileged communications."

In Special Master Brown's declaration, Brown summarized his qualifications as special master and the circumstances of his review of the seized documents, described *ante*.

12

Cipolletti, who had responsibility with Ernby for litigating the UCL action, declared: "I never had physical access to, and did not perform any searches in, any of the computers or electronic devices belonging to [the AWI defendants] that were seized by [OCDA] in relation to the October 2015 search warrant. I also never had physical access to, and did not review, any of the sealed records from the Special Master, Alan Brown. [¶] . . . The only documents and evidence that I have reviewed in this case were bates stamped and produced to [the AWI defendants]. [The AWI defendants'] counsel has never communicated to me that they believe any one of these documents (which can readily be identified by the bates number assigned) contains attorney client privileged communications."

McCament, who retired from OCDA in March 2020, declared: "When I was assigned to the AWI Builders case as a deputy district attorney for [OCDA], to my knowledge, I never reviewed any confidential or privileged documents on the computers, thumb drives, or other hard drive that were seized pursuant to search warrant or any privileged physical documents (hard copies)." She stated she had personal knowledge that Peck, who was a contract attorney and not a deputy district attorney in OCDA, had reviewed the computers that had been seized in the service of the search warrants, but did not finish her review; McCament never spoke to Peck about the materials related to the AWI case that she reviewed. McCament stated Brown had been selected from a county list of special masters to review the privileged physical documents (hard copies) in the case. McCament further stated she was "walled off" from the UCL action.

In his supplemental declaration, Nichols stated that on October 13, 2020, Nichols worked with OCDA's property and evidence manager to search for the evidence items that had been segregated and sealed by Special Master Brown in 2016. That day, he located seven sealed, manilla envelopes stored with the evidence for the "AWI/MEKIKYAN case" in OCDA's secured evidence storage room. Each of the seven envelopes had the words "Special Master" written on the exterior and a RCDA evidence

13

label.  Six of the envelopes were sealed with a label affixed across the flap with Brown's signature and date of February 9, 2016.  The label also had the words "DO NOT OPEN UNLESS ORDERED BY THE COURT."  The seventh envelope had the affixed RCDA's evidence label but the flap was sealed only with heavy, clear packing tape.  Nichols saw no sign of any of the sealed envelopes having been unsealed or opened in any manner.  Nichols was told by OCDA property and evidence manager that the secure storage room had limited and controlled access and that the logs and records maintained for evidence security and chain of custody contained no record of Ernby accessing or requesting access to the envelopes sealed by Brown.

The AWI defendants also submitted supplemental declarations in response to the trial court's order, which largely reiterated evidence that had already been presented to the court.

*H.  The Trial Court Denied the Motion to Recuse.*

In its minute order dated November 9, 2020, the trial court denied the motion to recuse.  Among other findings, the court found that the AWI defendants' contention that the seized property included over 10,000 pages of privileged material was without merit.[6]  The AWI defendants appealed.

---

[6]  The trial court's minute order included findings and analysis primarily focused on the AWI defendants' argument OCDA mishandled privileged material contained within the seized property.  Throughout their appellate briefs, the AWI defendants argue the trial court should have included additional findings in its minute order that are relevant to the court's rejection of the other grounds of the motion to recuse.  The record does not show the AWI defendants requested that the court make additional express findings and have cited no legal authority showing that the trial court was required to make any express findings.  "In the absence of an express finding, we usually would infer that the trial court made implied findings to support its decision, and then test the implied findings for substantial evidence."  (*Lynn v. George* (2017) 15 Cal.App.5th 630, 642.)

14

II

DISCUSSION

## A. *The People's Motion to Dismiss This Appeal.*

Before briefing in this appeal, the People filed a motion to dismiss this appeal on three grounds: (1) Code of Civil Procedure section 904.1 does not authorize the appeal nor is there any statutory basis for the appeal; (2) the AWI defendants had failed to serve the Attorney General with the notice of appeal as required by statute and the California Rules of Court; and (3) the AWI defendants had failed to timely and properly file the Civil Case Information Sheet as required under California Rules of Court, rule 8.100(g) and the case is being unnecessarily delayed. For the reasons we will explain, we deny the motion to dismiss.

### 1. *Appealability*

For the reasons explained in part II.B., *post*, section 1424(a) governs motions seeking to disqualify district attorneys and applies to the AWI defendants' motion to recuse here. Section 1424(a)(2) provides: "An appeal from an order of recusal or from a case involving a charge punishable as a felony shall be made pursuant to Chapter 1 (commencing with Section 1235) of Title 9, regardless of the court in which the order is made. An appeal from an order of recusal in a misdemeanor case shall be made pursuant to Chapter 2 (commencing with section 1466) of Title 11, regardless of the court in which the order is made." Penal Code section 1424 does not address the appealability of orders *denying* a motion to recuse and the parties have cited no legal authority addressing the appealability of such orders.

In *URS Corp. v. Atkinson/Walsh Joint Venture* (2017) 15 Cal.App.5th 872 (*URS Corp.*), in the context of a motion to recuse *private* counsel in a civil dispute, a panel of this court concluded: "Of course, orders granting or denying attorney disqualification motions are immediately appealable in California state courts.

15

[Citations.]  [¶]  The basis for this rule is not obvious or inevitable.  'A trial court's authority to disqualify an attorney derives from the power inherent in every court "[t]o control in furtherance of justice, the conduct of its ministerial officers, and of all other persons in any manner connected with a judicial proceeding before it, in every matter pertaining thereto."'  [Citation.]  [Code of Civil Procedure] [s]ection 904.1 does not explicitly mention attorney disqualification orders or [Code of Civil Procedure] section 128 orders among its list of appealable orders.  Federal courts do not allow an immediate appeal of attorney disqualification orders.  [Citation.]  California courts have expressed a preference for resolving attorney disqualification issues in writ proceedings, which 'are determined more speedily than appeals.'"  (*Id.* at pp. 878-879.)

Citing *Meehan*, *supra*, 45 Cal.2d at pages 214-218, in which the Supreme Court held that an order denying a disqualification motion was appealable, the court in *URS Corp.* explained that an order denying a disqualification motion is essentially an order denying a motion to enjoin counsel from further participation in a case.  (*URS Corp.*, *supra*, 15 Cal.App.5th at p. 879.)  An order refusing to grant an injunction is appealable under Code of Civil Procedure section 904.1, subdivision (a)(6), which authorizes an appeal from "an order granting or dissolving an injunction, or refusing to grant or dissolve an injunction."

The *URS Corp.* court further explained:  "*Meehan* acknowledged that trial courts have the power to disqualify counsel under inherent [Code of Civil Procedure] section 128 powers, but explained 'it is beyond question that [the moving party] specifically invoked the equity power of the court by his motion.'  [Citation.]  'Both the language of the motion and the order itself meet the test for an injunction laid down in . . . [Code of Civil Procedure] section 525, where an injunction is defined as ". . . a writ or order requiring a person to refrain from a particular act."'  [Citation.]  Moreover, under established authority, the moving party could have filed a separate action for injunctive

16

relief to disqualify counsel. [Citation.] Hence, the order denied injunctive relief and was appealable." (*URS Corp., supra*, 15 Cal.App.5th at pp. 879-880.)

The *URS Corp.* court further stated that "subsequent cases applied *Meehan* consistently to a variety of orders granting and denying disqualification motions," and the appellate court in *URS Corp.* ultimately held that the order disqualifying the appellant's counsel was appealable because, inter alia, it was an order granting an injunction. (*URS Corp.*, *supra*, 15 Cal.App.5th at p. 879.)

Although neither *Meehan* nor *URS Corp.* involved a motion seeking to disqualify a district attorney from prosecuting a civil action, the reasoning of those cases would apply here. As the trial court's order denying the motion to recuse denied the AWI defendants' request that Ernby, McCament, and the entire OCDA be enjoined from participating in the UCL action, it was an appealable order within the meaning of Code of Civil Procedure section 904.1, subdivision (a)(6).

But even if the order denying the motion to recuse here is not appealable, which we hold that it is, where, as here, a recusal motion is denied and no order of recusal is issued, a party may obtain review by petition for writ of mandate. (*Millsap v. Superior Court* (1999) 70 Cal.App.4th 196, 198; *Lewis v. Superior Court* (1997) 53 Cal.App.4th 1277, 1281, 1286.) This court has discretion to construe the AWI defendants' appeal as a petition for a writ of mandate from the order denying the motion to recuse. (*Black Diamond Asphalt, Inc. v. Superior Court* (2003) 114 Cal.App.4th 109, 114-115.) This case meets the criteria the California Supreme Court has established for treating an appeal from a nonappealable order as a petition for an extraordinary writ. (*Morehart v. County of Santa Barbara* (1994) 7 Cal.4th 725, 744-747.) The briefs and the record before this court contain in substance all of the elements required for an original writ mandate proceeding; there are extraordinary circumstances justifying the exercise of this court's discretionary power; and the real parties in interest will suffer no prejudice if we address the merits of the parties' dispute. (*Ibid.*)

17

*2. The AWI Defendants' Alleged Procedural Violations Do Not Warrant Dismissal of the Appeal.*

The People also argue this appeal should be dismissed because the AWI defendants failed to (1) serve the Attorney General with their notice of appeal, and (2) "properly or timely" file a Civil Case Information Statement required by rule 8.100(g) of the California Rules of Court. Even if the AWI defendants were required to serve the Attorney General with their notice of appeal (the AWI defendants had served OCDA on behalf of the People), the People offer no authority, and we have found none, that such an omission should result in the dismissal of the appeal.

Shortly after the motion to dismiss was filed, the AWI defendants filed a Civil Case Information Statement. The People do not argue, and really cannot argue, that they have been prejudiced as a result of the AWI defendants' alleged procedural failures.

We therefore deny the People's motion to dismiss the appeal.

*B.  Overview of Motions to Recuse a District Attorney Under Section 1424(a) and the Applicable Standard of Review.*

Section 1424(a)[7] governs motions seeking to disqualify a district attorney "from performing an authorized duty."  Although motions to recuse or disqualify a district attorney are most typically made in the context of a criminal prosecution, the broad language of section 1424(a) does not limit its application to criminal cases.[8]  (See,

---

[7]  Section 1424(a)(1) provides:  "Notice of a motion to disqualify a district attorney from performing an authorized duty shall be served on the district attorney and the Attorney General at least 10 court days before the motion is heard.  The notice of motion shall contain a statement of the facts setting forth the grounds for the claimed disqualification and the legal authorities relied upon by the moving party and shall be supported by affidavits of witnesses who are competent to testify to the facts set forth in the affidavit.  The district attorney or the Attorney General, or both, may file affidavits in opposition to the motion and may appear at the hearing on the motion and may file with the court hearing the motion a written opinion on the disqualification issue.  The judge shall review the affidavits and determine whether or not an evidentiary hearing is necessary.  The motion may not be granted unless the evidence shows that a conflict of interest exists that would render it unlikely that the defendant would receive a fair trial.  An order recusing the district attorney from any proceeding may be reviewed by extraordinary writ or may be appealed by the district attorney or the Attorney General.  The order recusing the district attorney shall be stayed pending any review authorized by this section.  If the motion is brought at or before the preliminary hearing, it may not be renewed in the trial court on the basis of facts that were raised or could have been raised at the time of the original motion."

[8]  "As originally enacted in 1980, the first sentence of Penal Code section 1424 provided:  'Notice of any motion to disqualify a district attorney from *prosecuting a criminal case* shall be served . . . .'  [Citation.]  The language providing for recusal from 'any authorized duty' was inserted by amendment in 1985.  [Citation.]  The legislative reports accompanying the amendment state:  'The sponsor of the bill, the Attorney General, indicates that appellate interpretation of the recusal statute limits the recusal motions to criminal proceedings, thereby excluding juvenile, habeas corpus, child support *and other matters* which are not technically "criminal."  This bill would expand statutory provisions to include non-criminal proceedings normally litigated by the district attorney.'"  (*In re Marriage of Abernethy*, *supra*, 5 Cal.App.4th at pp. 1198-1199, italics omitted & added.)

In contrast, subdivision (b) of Penal Code section 1424 only authorizes motions to disqualify a city attorney or city prosecutor "from performing an authorized duty *involving a criminal matter*" and thus does not apply in civil cases brought by a city attorney or city prosecutor.  (Italics added; see *City and County of San Francisco v.*

e.g., *In re Marriage of Abernethy*, *supra*, 5 Cal.App.4th at pp. 1195, 1199 [Pen. Code, § 1424 standard applies to a motion to disqualify a district attorney "from performing any authorized duty, including participation in civil proceedings for the modification of child support orders" even though the party seeking support has the alternative of retaining private counsel]; *Kain v. Municipal Court* (1982) 130 Cal.App.3d 499 [affirming order denying parent's motion to recuse district attorney in juvenile dependency action under Pen. Code, § 1424 standard].)

As the UCL authorizes district attorneys and other public prosecutors to file civil actions to enforce the state's consumer protection laws, it is the type of action normally litigated by the district attorney so as to trigger application of section 1424(a) to the motion to recuse in this action. (*Abbott Laboratories v. Superior Court* (2020) 9 Cal.5th 642, 652.) Specifically, section 17206, subdivision (a) of the Business and Professions Code provides: "Any person who engages, has engaged, or proposes to engage in unfair competition shall be liable for a civil penalty not to exceed two thousand five hundred dollars ($2,500) for each violation, which shall be assessed and recovered in a civil action brought in the name of the people of the State of California by the Attorney General, *by any district attorney*, by any county counsel authorized by agreement with the district attorney in actions involving violation of a county ordinance, by any city attorney of a city having a population in excess of 750,000, . . . by any city attorney of any city and county, or, with the consent of the district attorney, by a city prosecutor in any city having a full-time city prosecutor, in any court of competent jurisdiction." (Italics added.)

---

*Cobra Solutions, Inc.*, *supra*, 38 Cal.4th at p. 850 [Pen. Code, § 1424 inapplicable to civil fraud case brought by a city attorney]; see also Tuft et al., Cal. Practice Guide: Professional Responsibility (The Rutter Group 2021) ¶ 4:319a, p. 4-239 [Judicially-created standards apply (rather than Pen. Code, § 1424) to motions seeking to disqualify a city attorney in a civil case].)

Under section 1424(a), a motion to recuse a district attorney "may not be granted unless the evidence shows that a conflict of interest exists that would render it unlikely that the defendant would receive a fair trial." (See *People v. Vasquez* (2006) 39 Cal.4th 47, 59 [Under the statute, a district attorney cannot be recused unless there is a conflict that creates "an *actual likelihood* of leading to unfair treatment"].) "'[R]ecusal of an entire district attorney's office is an extreme step. The threshold necessary for recusing an entire office is higher than that for an individual prosecutor.' [Citation.] An entire prosecutor's office should not be recused unless it is necessary to assure a fair trial. The showing of a conflict necessary to justify so drastic a remedy must be especially persuasive." (*Spaccia v. Superior Court* (2012) 209 Cal.App.4th 93, 106-107.)

The California Supreme Court in *Packer v. Superior Court* (2014) 60 Cal.4th 695, 709-710, summarized the applicable burden of proof and procedures for motions to recuse a district attorney under section 1424(a):

"[W]e have held that a 'conflict' exists, for purposes of [Penal Code] section 1424, 'whenever the circumstances of a case evidence a reasonable possibility that the DA's office may not exercise its discretionary function in an evenhanded manner.' [Citation.] Moreover, 'there is no need to determine whether a conflict is "actual," or only gives an "appearance" of conflict.' [Citation.]

"However, the mere existence of a conflict, by itself, is not sufficient to require recusal of the district attorney. [Citation.] [Penal Code] [s]ection 1424 does not authorize disqualification merely because the defense has shown that the prosecutor's involvement 'would be unseemly, would *appear* improper, or would tend to reduce public confidence in the impartiality and integrity of the criminal justice system.' [Citation.] Instead, it is defendant's burden to allege facts which, if credited, establish (1) a 'conflict of interest,' and (2) that the conflict is 'so grave as to make a "fair trial" unlikely.' [Citation.] 'Thus, the first half of the inquiry asks only whether a "reasonable possibility" of less than impartial treatment exists, while the second half of the inquiry

21

asks whether any such possibility is so great that it is more likely than not the defendant will be treated unfairly during some portion of the criminal proceedings.' [Citation.]

"As previously described, the statutory procedure established by [Penal Code] section 1424 prescribes a two-stage process. At the first stage, the defendant must file a notice of motion containing 'a statement of the facts setting forth the grounds for the claimed disqualification and the legal authorities relied upon by the moving party,' and those allegations must be supported by 'affidavits of witnesses who are competent to testify to the facts set forth in the affidavit.' [Citation.] In opposition to the motion, the district attorney and the Attorney General may also file affidavits. [Citation.] After considering the motion and affidavits, the trial court then decides whether or not the second stage, an evidentiary hearing, is necessary. [Citation.] An evidentiary hearing may be ordered if the defendant's affidavits establish a prima facie case for recusal — that is, if the defendant's affidavits, if credited, would require recusal. [Citation.] [¶] The decision whether to hold an evidentiary hearing 'contemplates an exercise of discretion on the part of the trial court in determining whether a hearing is necessary,' and we review a trial court's decision not to hold an evidentiary hearing for an abuse of that discretion." (*Packer v. Superior Court*, *supra*, 60 Cal.4th at pp. 709-710.)

We review the trial court's decision to deny a recusal motion only for an abuse of discretion. (*People v. Gamache* (2010) 48 Cal.4th 347, 361.) "Accordingly, we must determine whether the trial court's findings were supported by substantial evidence and whether, in turn, those findings support the decision to deny recusal." (*Id.* at pp. 361-362.)

C. *OCDA's Handling of Potentially Privileged Material as a Basis for Recusal.*

The AWI defendants contend the trial court erred by denying the motion to recuse because, they argue, OCDA mishandled privileged information obtained through the execution of the search warrants in the earlier criminal investigation and obtained

22

through discovery in the instant UCL action, in violation of the standards established in *State Comp. Ins. Fund v. WPS, Inc.* (1999) 70 Cal.App.4th 644 (*State Comp.*), and affirmed in *Rico v. Mitsubishi Motors Corp.* (2007) 42 Cal.4th 807, 818 (*Rico*). For the reasons we will explain, the AWI defendants' argument is without merit.

### *1. An Attorney's Obligations Under the* State Comp. *Rule*

In *Rico*, *supra*, 42 Cal.4th at page 818, the issue presented was "what action is required of an attorney who receives privileged documents through inadvertence and whether the remedy of disqualification is appropriate." The California Supreme Court held that the following rule, which had been applied in *State Comp.*, *supra*, 70 Cal.App.4th 644, was fair and reasonable: "'When a lawyer who receives materials that obviously appear to be subject to an attorney-client privilege or otherwise clearly appear to be confidential and privileged and where it is reasonably apparent that the materials were provided or made available through inadvertence, the lawyer receiving such materials should refrain from examining the materials any more than is essential to ascertain if the materials are privileged, and shall immediately notify the sender that he or she possesses material that appears to be privileged. The parties may then proceed to resolve the situation by agreement or may resort to the court for guidance with the benefit of protective orders and other judicial intervention as may be justified.'" (*Rico*, at p. 817.)

### *2. The Trial Court's Ruling*

Here, the trial court applied the *State Comp.* rule and determined OCDA had not violated it. In its minute order denying the motion to recuse, the trial court summarized its findings and analysis. As to privileged material contained within the property seized during the execution of the search warrants, the trial court found:

23

"Despite [the AWI defendants] asserting there were 'over ten thousand attorney-client communications between [the] AWI defendants and their lawyers' in the materials seized [citation], the Court is unconvinced that this is the case. Indeed, all of the materials seized pursuant to the warrants were returned to [the AWI defendants] by summer of 2018 [citation]; yet in response to Plaintiff's document request [in the instant UCL case], [the AWI defendants] produced a privilege log listing only 27 entries claiming attorney-client privilege, all of which appear to be emails between [the AWI defendants] and their counsel.

"To the extent that additional documents somehow exist on the computers and other documents seized by the OCDA and/or Riverside DA, Plaintiff has produced declarations from numerous individuals supporting that there was no review of any privileged documents by attorneys actually working on this matter on behalf of Plaintiff. Although there was some review of documents by Special Master Brown, he was never paid and did not represent Plaintiff. There was also some review of documents and electronic devices by OCDA investigators for privileged documents during a 'taint review' that were bookmarked, but not shared with any of the attorneys prosecuting this matter."

As to the privilege log the AWI defendants had served since the trial court's request for supplemental briefing and evidence on the motion to recuse, in its minute order, the court stated: "Ernby stated [the AWI defendants] had not produced a privilege log in this matter until 10/10/20 and had never previously identified any of the over 300,000 documents Plaintiff had produced as privileged. [Citation.] She stated that with the exception of one potentially privileged document that was accidentally produced by [the AWI defendants], which she immediately notified [the AWI defendants] about and destroyed, she is not aware of having reviewed any privileged documents in this case. [Citation.] Ernby never had physical access or performed any searches on any of the electronic devices and never reviewed any of the documents sealed by Brown."

24

The trial court ultimately found no violation of the *State Comp.* rule by any prosecutor, stating: "[The AWI defendants] cite to *State Comp. Ins. Fund v. WPS, Inc. . . .* for the premise that an attorney, 'who receives materials that obviously appear to be subject to an attorney-client privilege or otherwise clearly appear to be confidential and privileged and where it is reasonably apparent that the materials were provided or made available through inadvertence, the lawyer receiving these materials should refrain from examining the materials any more than is essential to ascertain if the materials are privileged, and shall immediately notify the sender that he or she possesses material that appears to be privileged.' [Citation.] Ernby states that upon receipt of one privileged document inadvertently sent by [the AWI defendants], she immediately notified defense counsel and destroyed the document, which would comply with the *State Comp* requirements. To the extent that other items were privileged, as noted, Special Master Brown sealed privileged documents away from counsel, which continue to be sealed, and which were not reviewed by any of the attorneys working on this matter. [Citations.] As none of the attorneys involved in this matter reviewed those documents, there is no violation of the attorney-client privilege. [Citation.]

"The bottom line is that Plaintiffs' trial counsel have produced to [the AWI defendants] the entire universe of 300,000 plus documents that they reviewed in connection with their prosecution of this case. [The AWI defendants] *have failed to identify a single one of these bates-stamped documents that falls within the privilege*.

"As there is no evidence that Plaintiffs' counsel has reviewed any attorney-client communication and/or work product materials, the motion to recuse or disqualify is DENIED in its entirety." (Italics added.)

25

*3. The Trial Court's Finding that OCDA Did Not Violate the* State Comp. *Rule is Supported by the Record.*

The AWI defendants do not argue that any of the trial court's findings were unsupported by substantial evidence. Indeed, as to the property seized through the execution of the search warrants, the lawfulness of which is not at issue in this appeal, substantial evidence showed: (1) counsel for some or all of the AWI defendants immediately informed OCDA that the seized property included information protected by the attorney-client privilege and/or the attorney work product doctrine; (2) all documents obtained by execution of the search warrants were thereafter reviewed by Special Master Brown who had been selected from a list of special masters and was not compensated for his services; (3) as to the small number of documents he found to be privileged, Brown placed them in sealed envelopes which were then placed in secure storage; (4) only a partial review of the seized computers was performed, the results of which were placed in secure storage; (5) the seized property was returned to the AWI defendants in the summer of 2018; and (6) neither McCament, nor Ernby, nor any other deputy district attorney reviewed any privileged material — whether in documentary or digital form.

As to the single one-page document that the AWI defendants had inadvertently produced to the People in the instant UCL action, which Ernby thought appeared to be privileged, Ernby stated in her supplemental declaration that she promptly notified the AWI defendants' counsel of the document, did not recall reviewing any substantive information in that document, and had it destroyed and removed from OCDA's files. Ernby also stated that she was otherwise unaware of any privileged documents that she had had access to or reviewed in this case, never had physical access to and did not perform searches in any of the computers or electronic devices that had been seized in the execution of the search warrants, and never had physical access to and did not review any of the sealed records from the special master. Ernby confirmed that, except for certain documents containing attorney-work product in her file, all the

26

documents and evidence that she had access to review in the instant civil case were bates stamped and produced to the AWI defendants, which consisted of over 300,000 pages of documents in the case. The AWI defendants have not communicated to Ernby that they believed any of those documents contained attorney-client privileged communications.

In their opening brief, the AWI defendants do not identify any documents produced by the People in this case that they contend were privileged. Instead, they argue in conclusory fashion: "Here, possession, and what *must have been* review of the confidential communications between [the AWI defendants] and their counsel, affected [the AWI defendants'] right to counsel and abridged that right." (Italics added.) But the AWI defendants do not offer any evidence showing McCament, Ernby, or any OCDA personnel, other than those who submitted declarations in opposition to the motion to recuse, had access to, much less reviewed, any confidential communications. That McCament rejected proposals by the AWI defendants' counsel regarding how to go about ensuring the protection of privileged material, and failed to return the seized property sooner, does not establish that OCDA improperly used, much less reviewed, such material.

In their opening brief, without citations to the record, the AWI defendants state: "Instead of returning privileged materials, as required by law, McCament asked a personal injury lawyer to review a handful of hard copy documents. She never asked him, however, to review the forty electronic devices. Nor was there any discussion or evidence that he was briefed and knew for what he should be looking. There is no evidence presented by prosecutors that this 'Special Master' Mr. Brown even knew who the lawyers were that were communicating with their client. This was not a formal inspection; it was a favor for a friend to cover for the 'harangues' of defense counsel who were trying to protect their clients. Essentially, OCDA prosecutors 'papered over' the privilege violations and ignored their obligation to have a real Special Master conduct an authentic privilege review. And prosecutors then completely ignored any review of the

27

forty computers. Obviously, McCament knew such trivial review would not suffice so she lied about it and claimed the 'Special Master' was in 'taint review' working on the computers — all of which was false."

The record however supports the trial court's finding Brown was a "real Special Master" as he had completed the California State Master Program and had previously served as a special master in approximately 10 matters. The record shows that Brown reviewed not just a handful of documents, but instead inspected "dozens of Bankers Boxes reviewing thousands of pages of records" of which he found a "small number" of documents he believed to be privileged. There is no evidence in the record that Brown lacked requisite information and instructions or was otherwise unable to conduct a thorough and accurate privilege review of the documents. Furthermore, there is no evidence that Brown's service as a special master was informal or "a favor for a friend"; the record is devoid of any evidence Brown had any relationship, personal or otherwise, with any OCDA personnel.

The record also shows that review of the seized computer equipment, which included "taint review," was never completed. It is unclear whether it had been the plan to have Special Master Brown review computer evidence as well until efforts to review the electronic evidence ended. It is undisputed the seized property was placed in secure storage, where it was unavailable to any Orange County deputy district attorneys with responsibility for the instant UCL action, and was returned to the AWI defendants in the summer of 2018.

The trial court found the People's evidence regarding access, the scope of review, secure storage, and return to the AWI defendants of confidential material to be credible and the AWI defendants' assertion that 10,000 privileged documents had been seized, not credible. (*Haraguchi v. Superior Court* (2008) 43 Cal.4th 706, 713 ["We review rulings on motions to recuse only for abuse of discretion precisely because trial courts are in a better position than appellate courts to assess witness credibility, make

28

findings of fact and evaluate the consequences of potential conflict in light of the entirety of a case, a case they inevitably will be more familiar with than the appellate courts that may subsequently encounter the case in the context of a few briefs, a few minutes of oral argument, and a cold and often limited record"].)

Furthermore, the cases the AWI defendants cite in their opening brief in support of their contention that OCDA's handling of the privileged material requires recusal are factually inapposite. (See, e.g., *Rico*, *supra*, 42 Cal.4th at pp. 812, 819 [affirming disqualification of counsel who acquired privileged notes, and thereafter reviewed them, made copies and disseminated those copies to experts and other attorneys, and otherwise "acted unethically in making full use of the confidential document"]; *Clark v. Superior Court* (2011) 196 Cal.App.4th 37, 53 [affirming disqualification of counsel who reviewed privileged documents beyond that essential to ascertain whether they were privileged and also appeared to have used some of the information in the privileged documents to question witnesses]; *Morrow v. Superior Court* (1994) 30 Cal.App.4th 1252, 1254 [affirming dismissal of criminal case because the "prosecutor use[d] the courtroom as a place to eavesdrop upon privileged attorney-client communications"].)

In sum, the record does not show OCDA's handling of privileged material violated the *State Comp.* rule or otherwise constituted a conflict such that there is a reasonable possibility it would not exercise its discretionary function in an evenhanded manner in the civil action, much less a conflict that would render it unlikely the AWI defendants would receive a fair trial in this case.

## D. *The Alleged OCDA Misconduct in the Criminal Investigation as a Basis for Recusal.*

Citing circumstances and events of the prior criminal investigation, the AWI defendants also argue the motion to recuse should have been granted because "[t]he record before the trial court demonstrated without a doubt that OCDA has a grave

29

conflict of interest in this case that requires its disqualification." (Capitalization omitted.) The record establishes that, after OCDA decided it would not pursue criminal charges against the AWI defendants, the matter was reassigned to a new deputy district attorney, Ernby, to civilly prosecute the AWI defendants for violations of the UCL. Ernby had not been involved in the criminal investigation, and OCDA personnel who had been involved in the criminal investigation, including now-retired McCament, were walled off from the instant civil action that had become Ernby's responsibility.

Therefore, even if we were to assume for purposes of argument that, in the course of the criminal investigation, McCament and other OCDA personnel had engaged in the misconduct alleged by the AWI defendants, under the circumstances of this case, any such misconduct would not have supported recusing now-deceased Ernby and the rest of the OCDA from prosecuting the instant civil action. "Recusal is not a mechanism to punish past prosecutorial misconduct. Instead, it is employed if necessary to ensure that *future* proceedings will be fair. '[Penal Code] [s]ection 1424 does not exist as a free-form vehicle through which to express judicial condemnation of distasteful, or even improper, prosecutorial actions.'" (*People v. Bryant, Smith and Wheeler* (2014) 60 Cal.4th 335, 375.)

In *People v. Bryant, Smith and Wheeler*, *supra*, 60 Cal.4th at page 374, the California Supreme Court rejected an argument that is similar to the one raised by the AWI defendants: "Arguing for reversal, defendants focus primarily on why the past actions of the prosecutors were improper. That is not the proper inquiry. The prosecutors whose conduct was questioned were removed from the case. The remaining question is whether *any* Los Angeles deputy district attorney could fairly prosecute. Recusal of a prosecutor under [Penal Code] section 1424 constitutes a statutorily authorized judicial interference with the executive branch's constitutional role to enforce the law. Accordingly, the decision whether to recuse must be carefully considered. '[R]ecusal of an entire prosecutorial office is a serious step, imposing a substantial

30

burden on the People, and the Legislature and courts may reasonably insist upon a showing that such a step is necessary to assure a fair trial.'"

The Supreme Court concluded in that case that the defendants had failed to demonstrate a likelihood that the Los Angeles District Attorney's Office could not prosecute the case fairly and did not show that, in fact, the ensuing proceedings were unfair. The Supreme Court stated: "For the most part defendants rely on accusations of overzealous advocacy by prosecutors who were replaced. Defendants claim those prosecutors made misrepresentations in court documents, tried to taint the jury pool, failed to timely provide discovery, and tampered with a witness. No aspect of these alleged improprieties, however, establishes a conflict of interest that was likely to affect the hundreds of *other* prosecutors in the office. [Citations.] Even if specific prosecutors had engaged in misconduct, this behavior standing alone would not necessarily evince a likelihood that other prosecutors would exceed the bounds of proper advocacy. 'Our cases upholding recusal have generally identified a structural incentive for the prosecutor to elevate some other interest over the interest in impartial justice, should the two diverge.' [Citation.] Here, defendants point to nothing in the record establishing that the prosecutors who ultimately tried the case engaged in any improper action due to a conflict of interest." (*People v. Bryant, Smith and Wheeler*, *supra*, 60 Cal.4th at p. 375.)

The record does not show that the alleged misconduct on the part of OCDA personnel in the course of the criminal investigation of the AWI defendants was systemic within the OCDA or that there existed a structural incentive for OCDA personnel to elevate some other interest over the interest in impartial justice. (Cf. *People v. Dekraii* (2016) 5 Cal.App.5th 1110, 1151 [finding systemic problems within both the OCDA and the sheriff's office that demonstrated the OCDA "had a divided loyalty between its duty to fairly prosecute cases and protecting the Sheriff," recusal of the OCDA was necessary to ensure the defendant would receive a fair penalty phase].)

31

*E. In Any Event, Substantial Evidence Shows That Any Alleged Misconduct by OCDA Personnel in the Criminal Investigation Is Irrelevant to the Instant UCL Action.*

Substantial evidence supports the finding that the alleged improper conduct by McCament in the criminal investigation had no bearing on the instant UCL action and did not render it unlikely the AWI defendants would receive a fair trial in this case unless Ernby and the entire OCDA were disqualified from it.

First, the AWI defendants contend OCDA had wrongfully impeded the discovery process in the earlier administrative action brought against them by the DLSE by advising witnesses to withhold evidence that the AWI defendants contend the court had ordered to be turned over. Specifically, they argue McCament encouraged retained construction compliance monitor and investigator Christa Schott, from private labor monitoring firm Alliant Consulting, to withhold documents from them and also assisted Schott in filling out a declaration to not turn over evidence in response to a subpoena. They further alleged McCament told the "DLSE to withhold information from AWI attorneys, including the names of workers and questionnaires filled out by workers, as did Schott for OCDA."

In support of their argument, the AWI defendants cite a portion of the trial court's ruling in the instant UCL action denying their motion to dismiss for outrageous government conduct, arguing that "[t]he Trial Court similarly expressed its disapproval of the withholding of 'documents necessary for [the AWI defendants] to defend themselves in an administrative action' which, according to the Court, 'may constitute a violation of due process in that proceeding.'" (Italics & boldfacing omitted.) The cited minute order states that generally it is "[t]rue, withholding documents necessary for [the AWI defendants] to defend themselves in an administrative action may constitute a violation of due process in that proceeding." The trial court's ruling, however, continued: "But there is no evidence that the withheld documents are germane to the present action, or that they

32

have not been produced by Plaintiff or DLSE in response to production requests in this case."

The AWI defendants do not address in their appellate briefs whether any documents they contend had been withheld at McCament's direction are germane to this UCL action or whether any have not been produced by OCDA or the DLSE in response to production requests in this case.

Second, the AWI defendants cite a statement that the trial court made in its ruling denying their motion to dismiss for outrageous government misconduct that the court was "troubled that a district attorneys' office [RCDA] would pay a construction monitor [Schott/Alliant Consulting] to demand documents from a potential criminal defendant that are unrelated to ongoing compliance work and to which the compliance officer has no contractual right to obtain. Such action circumvents the Fourth Amendment protections that include a search warrant being issued on probable cause before a magistrate." The trial court's ruling, however, continued: "But it is unclear from the evidence presented what information or documents Schott obtained from AWI on behalf of OCDA; accordingly, it is unknown whether these requests exceeded what AWI was contractually required to provide." In other words, the AWI defendants have failed to show McCament or other OCDA personnel procured any documents from the AWI defendants that the AWI defendants were not already required to provide.

Third, the AWI defendants argue OCDA has a conflict because of evidence that Schott helped draft an investigator's declaration offered in support of the request that the trial court issue the search warrants in the criminal investigation. The trial court in this UCL action addressed this issue in its ruling on the motion to dismiss for outrageous government misconduct. The court stated it had reviewed the evidence before it regarding at least two separate search warrants obtained by OCDA for the AWI defendants' property and records, and concluded: "[T]he probable cause affidavits were not based on the declaration Schott drafted. There appears nothing improper in noting

33

that Alliant Consulting found discrepancies in documentation AWI provided; AWI was contractually required to turn over certain documents to Alliant, who was in turn tasked with determining AWI's compliance with prevailing wage laws. Again, there was no evidence that the timecards imaged at AWI's construction trailer were 'stolen.' Moreover, even if, arguendo, there was some problem with the information from Alliant Consulting, the remainder of the affidavit based on direct interviews of various workers is more than sufficient to support the warrant."

In any event, as pointed out by the trial court, "As warrants can be based upon information and affidavits from witnesses who are not law enforcement officers, [the AWI defendants'] contention that Schott should not have been involved in the warrant process is incorrect. [The AWI defendants] have provided no statute or case law that prohibits an informant or witness from providing information to law enforcement for purposes of a warrant."

Finally, again in reference to the prior criminal investigation, the AWI defendants argue that OCDA and its lawyers had become "so enmeshed" and entangled in that investigation with Schott that it created a grave conflict of interest that made fair and impartial treatment of the AWI defendants unlikely. They argue OCDA had become "inextricably linked, by both contract and in practice, to Schott, who not only had an[] axe to grind against [the AWI defendants], but personally wanted to see Mekikyan go to prison." The AWI defendants cite *People v. Eubanks* (1996) 14 Cal.4th 580, 590, in which the Supreme Court stated: "'[A] prosecutor need not be disinterested on the issue whether a prospective defendant has committed the crime with which he is charged. If honestly convinced of the defendant's guilt, the prosecutor is free, indeed obliged, to be deeply interested in urging that view by any fair means. [Citation.] True disinterest on the issue of such a defendant's guilt is the domain of the judge and the jury — not the prosecutor. It is a bit easier to say what a disinterested prosecutor is not than what he is. He is not disinterested if he has, or is under the influence of others who have, an axe to

34

grind against the defendant, as distinguished from the appropriate interest that members of society have in bringing a defendant to justice with respect to the crime with which he is charged.'"

The AWI defendants' contentions of entanglement are without support. It is true evidence shows Schott was very active in investigating the AWI defendants during the criminal investigation, and in so doing, communicated frequently with McCament and assigned investigators while the investigation was continuing. But the fact of those efforts, combined with the fact that she was paid for her work and may have strongly believed that the AWI defendants had engaged in unlawful conduct, does not establish that she had "an axe to grind" against the AWI defendants within the meaning of *People v. Eubanks*, *supra*, 14 Cal.4th at page 590, much less that any such axe to grind perspective should be generally imputed to OCDA.

The AWI defendants have failed to show how the instances of alleged misconduct by OCDA personnel and/or Schott during the criminal investigation they cite in their appellate briefs have any bearing on whether Ernby and the entire OCDA should have been recused in the instant UCL action.

*F. Even if Ernby Had Inappropriately Threatened Pacheco, Mekikyan, and Kanu, Such Conduct Was Insufficient to Warrant Recusal of Ernby and the Rest of OCDA from This Case.*

The portion of the AWI defendants' opening brief, titled "Statement of Relevant Facts and Proceedings Below," summarizes the AWI defendants' evidence describing the June 4, 2018 courthouse incident involving Ernby allegedly threatening Mr. Mekikyan, Pacheco, and paralegal Kanu — allegations Ernby categorically denied in the declaration she offered in opposition to the motion to recuse. Those incidents are only briefly mentioned in the argument section of that brief: "These violations are in addition to the many abuses already detailed above and include, among other things, three incidences of Ernby attempting to obtain an advantage in this case by threatening

35

prosecution of [Mr. Mekikyan] and the defense team in violation of Rule 5-100. Rule 5-100 (Threatening Criminal, Administrative, or Disciplinary Charges) states, in pertinent part, that, '(A) A member shall not threaten to present criminal, administrative or disciplinary charges to obtain an advantage in a civil dispute.'" The AWI defendants' reply brief refers once to these incidents, stating, "Ernby's repeated threats herself to Appellants and their counsel."

It is a cardinal rule of appellate procedure that the appellant's burden is to present argument and legal authority on each point raised on appeal. (*Stoll v. Shuff* (1994) 22 Cal.App.4th 22, 25, fn. 1.) The AWI defendants have failed to provide legal authority showing that, even if the AWI defendants' allegations were true, and Ernby had made the alleged threats, acts which she had repeatedly disavowed in multiple communications with counsel, such conduct should have resulted in her recusal, much less that of the entire OCDA. Even if the trial court found the AWI defendants' evidence as to what happened that day to be credible, it does not support the finding that a conflict had arisen such that it would be unlikely the AWI defendants would receive a fair trial in this case.

The AWI defendants' allegations of threats by Ernby echo their allegations that McCament had, at some unspecified time during the criminal investigation, wrongfully "threatened to file all potential acts that may have occurred exclusively in Riverside County in their criminal filing." In his declaration, Pacheco stated that he informed McCament she lacked territorial jurisdiction to take such action, to which she responded she would do so anyway. Pacheco stated he informed McCament's supervisor of McCament's threat and the supervisor informed him that no such action would take place.

There is no evidence McCament's alleged threat materialized into any action. The AWI defendants do not cite any legal authority supporting its position that an

36

alleged threat of this kind by a now retired deputy district attorney would have supported recusing Ernby or OCDA from prosecuting the UCL claims against them.

*G. The Trial Court Did Not Abuse Its Discretion by Not Holding an Evidentiary Hearing Before Ruling on the Motion to Recuse.*

Toward the end of their opening brief, the AWI defendants summarily argue the trial court abused its discretion in failing to conduct an evidentiary hearing before denying the motion to recuse. In their reply brief, the AWI defendants reference an evidentiary hearing once: "The Trial Court's refusal to redress these issues through disqualification, or even to hold an evidentiary hearing in the wake of the vast amount of evidence presented, was arbitrary and capricious and should be reversed."

The AWI defendants do not cite to where in the record they ever requested an evidentiary hearing in the trial court; they did not do so in their moving papers. Furthermore, they do not address how the trial court's decision not to hold an evidentiary hearing constituted an abuse of discretion, much less how they were prejudiced by that decision. The trial court had already requested supplemental briefing and evidence before ruling on the motion to recuse and all parties submitted multiple declarations and briefs in response to that request. The AWI defendants do not explain what evidence they would have offered at such a hearing that had not already been before the trial court.

The AWI defendants have therefore failed to show the trial court abused its discretion by not holding an evidentiary hearing before denying the motion to recuse.

37

## III

## DISPOSITION

The order denying the motion to recuse and disqualify is affirmed.

Respondent shall recover costs on this appeal.


        _____

        MOORE, J.

WE CONCUR:


_____

BEDSWORTH, ACTING P. J.


_____

GOETHALS, J.